# EXHIBIT 13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-80030-CR-DIMITROULEAS/MATTHEWMAN

UNITED STATES OF AMERICA,
    Plaintiff,

v.

PHILLIP BRAUN,
AARON SINGERMAN,
JAMES BOCCUZZI, and
BLACKSTONE LABS, LLC,
    Defendants.
_____/

**DEFENDANTS' REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANTS'
TIMELY MOTION TO SUPPRESS**

COME NOW, the Defendants, Phillip Braun, Aaron Singerman, James Boccuzzi and Blackstone Labs, LLC, by and through undersigned counsel, pursuant to Fed. R. Crim. P. 41(h), hereby files this Reply to the Government's Opposition to Defendants' Motion to Suppress Evidence (DE-491, "Government's Opposition") and in support thereof states as follows:

**I. The Procedural History Confers Timeliness**

As all parties are aware, the Food and Drug Administration ("FDA") began this investigation in 2015[1]. Multiple Search Warrants were executed in February of 2017. Defendants were indicted on March 7, 2019. Trial was set for May 28, 2019. The most recent October 8, 2021 Calendar Call and trial date of October 12, 2021 have been reset and continued to November 19th

---

[1] Upon information and belief, the investigation into Blackstone Labs commenced following receipt of a trade complaint filed by Covington & Burling at the behest of client GTx Pharma.

and 22nd respectively. (DE-498 Order Granting Continuance). Defendants' recently filed Motion to Dismiss With Prejudice For Speedy Trial Act Violations (DE-489) outlines the circumstances giving rise to the original discovery deadline of May 17, 2019 and pretrial motion deadline of September 17, 2019[2]. As of the most recent date for which trial has been set, no deadline for pretrial motions has been established. The Government's Opposition has cited a litany of cases whereby timeliness had passed due to missing a deadline or not demonstrating good cause. (DE- 491). Neither are applicable here.

The Federal Rules of Criminal Procedure provide that motions to suppress evidence must be raised by pretrial motion "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(C). The rules allow courts to set and extend deadlines for parties to file pretrial motions and states that if a date is not set, then the default deadline for pretrial motions is the start date of the trial. Fed. R. Crim. P. 12(c)(1).

The Government's Opposition inaccurately claims there are no new facts. This is an inaccurate, though convenient euphemism for the Government, who filed this case in 2019, yet are still providing Defendants with discovery productions comprised of data from 2014[3]. Whether a fact is new or old, the Government has consistently failed to produce discovery in a timely manner, and the Defense must be afforded the opportunity to examine each new production and piece of information in light of those prior, and file motions accordingly. Simply inserting the word "Untimely" into the title of the Government's Response to Defendant's Motion to Suppress, does not make it so. (DE- 491).

---

[2] Based on a trial date of January 6, 2020.
[3] Production 23, an exculpatory video from 2014, was given to the Defendants on October 5th, 2021.

Ex. 13
Page 2

## II. The Defendants' Motion Meets the Requirements for a *Franks* Hearing

### (1) The Affidavit Does Not Contain Sufficient Evidence of Mail and Wire Fraud

The Government claims that because the Defendants did not challenge the allegations of mail fraud, wire fraud, and conspiracy to commit these offenses that the warrant affidavit ("Affidavit") must contain enough probable cause on these counts to survive as a whole. The Government fails to explain how these allegations, barely mentioned in the Affidavit, and always as clauses dependent on other charges, could serve as independent probable cause. The charges of mail fraud, wire fraud, and conspiracy are tied inexorably to allegations that the Defendants were manufacturing and distributing substances that did not comply with the applicable statutes. If the Food, Drug and Cosmetic Act ("FDCA"), the Dietary Supplement Health and Education Act of 1994 ("DSHEA"), and the Controlled Substances Act ("CSA") charges were exorcised from the Affidavit, no alleged crime would remain. The allegations of conspiracy, mail fraud, and wire fraud are so deeply connected that throughout the Affidavit, they are never mentioned without reference to the (alleged) underlying substantive crime. Despite the Government's claims, these allegations could not possibly stand alone, nor provide independent probable cause. Even as charged through the Indictment, wire fraud and mail fraud are wholly subordinate to counts for which they do not and cannot stand alone.

Count 1, ((18 USC 371) Conspiracy to Defraud the United States and to Commit Federal Offenses) encompasses the entirety of mail and wire fraud (inclusive of 18 USC 1341 and 1343, neither are found on any individual charge sheets of the remaining defendants as attached to the Indictment). The wire fraud and mail fraud appear by statutory code in a single substantive charge and again for purposes of listing forfeiture consequent to the final group of charges, which allege money laundering.

Ex. 13
Page 3

Counts 9-11 (18 USC 1957a) allege that Defendant Singerman engaged in three monetary transactions (deposits representative of two payments on his home and a vehicle payment). Counts 12-14 allege that Defendant Braun engaged in three monetary transactions (making two payments on his home and one vehicle payment). Counts 9-14 constitute the entirety of the Money Laundering charges facing the Defendants. (Indictment pg. 22-24).

Only if the underlying charges alleging violations of the FDCA, DSHEA and the CSA are taken as true, could there be probable cause transforming the mere payment of bills into money laundering. Had the Government provided more than a threadbare recital of the statutory elements of the alleged crimes, there may be independent and cognizable mail fraud and wire fraud charges possible. But, where the Affiant fails to provide evidence independent of the underlying, substantive charges alleged in the Affidavit, it remains nonsensical to claim probable cause exists for these allegations divorced from the underlying acts.

**(2) The Properly Redacted Affidavit Would Not Support Probable Cause as to the Substances Addressed in the Defendants' Motion to Suppress.**

The Defendants' Motion to Suppress outlined all of the misstatements made in the Affidavit. A total of seven (7) reckless or intentional misstatements were identified in the Motion. The Government surgically removed statutory language, pieced together inadequate evidence, and misrepresented its findings to the Court. If the Court were to remove all misstatements outlined in the Defendants' Motion to Suppress, it would find that the Affidavit is incomplete and insufficient to establish probable cause.

For example, the Government intentionally misstates the Affidavit[4]:

> For each of these products, the Affidavit alleged probable cause that Blackstone Labs intended to defraud consumers by intentionally not listing the potentially unsafe ingredients on product labels, in violation of 18 U.S.C. 1341, 1343, and 1349. Aff. ¶¶ 64, 72. The evidence of intent to defraud included a handwritten note that appeared to indicate that

---

[4] Note here that 18 USC 1349 is not charged at all in the Indictment, though it is mentioned here by the Government.

Aaron Singerman had instructed a Blackstone Labs manufacturer to misrepresent information on product labels and defraud consumers. Id. ¶ 113(D).

The handwritten note mentions emails between Defendant Singerman ("Aaron") and an Unindicted Co-conspirator ("Wes"). Obviously neither authored the handwritten note. As "Wes" had been, and is, a Government Witness and Informant, the Government (or Affiant) did not need to speculate as to the context of this handwritten note. Had the Government, or Affiant, executed the appropriate level of diligence, they would have known that nothing illicit had taken place, nor did the note represent probable cause that a crime had been (or would be) committed. Thus, probable cause does not exist.

First, the ingredient in question[5] is not "potentially unsafe." If this were the case, one would expect the Government to have charged the Defendants with its distribution. Instead, it is never mentioned (anywhere) in the Affidavit or the Indictment. The FDA has never addressed this ingredient or intimated that it is unsafe. Not a single Government scientist has ever opined in support of the Government's "unsafe" claim. The Government Attorneys have fabricated this "unsafe" claim whole cloth.

Second, the Government claims that this is "evidence of intent to defraud." An anonymous handwritten note claiming the existence of "*incriminating*" emails (made public by Defendants several years prior), is not itself incriminating, nor would it rise to the level of probable cause. Depending on the type of label, exact ingredient amounts need not be disclosed (proprietary blends, etc.), thereby invalidating the Government's theory. Finally, as the information was already available online (no warrant need be issued), the emails involved a Government witness and

---

[5] Theacrine, a naturally occurring constituent of tea leaves. The particular brand referenced herein has been "Generally Recognized as Safe" by experts. Again, this is a fact the Government ought to have discovered with a modicum of diligence.

informant (who could simply be asked), and the product in question was discontinued (the formulator deceased), the Government reveals their lack of due diligence in this prosecution.

The Defendants maintain their position that a *Franks* hearing is now required. *Franks* held "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment *requires* that a hearing be held *at the defendant's request*." *Franks v. Delaware* at 155 (emphasis added). The Defendants' Motion to Suppress identified, in detail, the numerous misrepresentations made by the Affiant regarding the legal status of an FDA warning letter, final rulings, description of substances, and relevant statutory language. Each purported "fact" or (mis)statement of law has been addressed and it belies credulity that probable cause could remain intact standing on a foundation of falsehoods.

### III. The Search Warrant Affidavit Did, as a *Matter of Fact* Contain Misleading Statements

There is no reasonable explanation for why an Agent, working for the FDA, the agency tasked with rulemaking, is unable to accurately cite statutory language (omitting only the language that makes a substance legal), is unaware of her own agency's definition and applicability of warning letters, and is uninformed as to the actual legal status of the substances at issue. Defendants maintain that the Affiant made intentional *and* reckless misstatements in the Affidavit and as such, the Affidavit cannot be presumed to establish probable cause.

**(1) The Affidavit Misstates the Legal Status of a Warning Letter**

The Supremacy of Text Canon dictates that "words of a governing text are of paramount concern, and what they convey, in their context, is what the text means[6]." A Warning Letter is not

---

[6] Scalia, Antonin, and Bryan A. Garner. Reading Law: The Interpretation of Legal Texts., 2012. Pg. 56

a creature of statute, but rather one created by the FDA itself. Thus, one must turn to the FDA's own regulatory text to find its meaning.

This definition is found, inter alia, in the FDA Regulatory Procedures Manual[7]. The phrase has also been clarified through adjudication, ""[A]n FDA warning letter compels action by neither the recipient nor the agency." *Sproule v. United States FDA*, No. 9:17-CV-80709, 2018 U.S. Dist. LEXIS 62507 (S.D. Fla. Apr. 13, 2018). *Holistic Candlers & Consumers Ass'n v. FDA*, 398 U.S. App. D.C. 378, 664 F.3d 940 (2012); *Hi-Tech Pharm., Inc. v. Hahn*, Civil Action No. 19-1268 (RBW), 2020 U.S. Dist. LEXIS 113730 (D.D.C. June 29, 2020); See Also *Cody Laboratories, Inc. v. Sebelius*, 446 Fed. Appx. 964, 969 (10th Cir. 2011). The phrase has been previously articulated, defined, and adjudicated to have the precise meaning set forth in Defendant's Motion to Suppress. (DE-479). The meaning and status claimed by the Affiant in the Affidavit at issue is exactly the opposite, therefore, the affidavit is false and misleading.

But the Government overlooks the fact that the FDA, not the Affiant, and certainly not the Department of Justice, has been empowered by Congress to promulgate rules and regulations pursuant to the FDCA and DSHEA. The Government's Response asks this Court to ignore the FDA's definition of Warning Letter, despite repeated misstatements of the FDA's own definitions and case law. The Government then asks the court to bifurcate the phrase, define each word individually, and arrive at the conclusion that an informal warning is actually formal. This invitation to sanction doublespeak must be rejected. The Government's arguments are not only misplaced, but they are also an affront to the duty of candor owed to the Court.

**(2) The Government Knowingly Failed to Correct a False Statement and/or Misstatements of Legal Authority.**

---

[7] U.S. Food and Drug Administration Regulatory Procedures Manual.

Ex. 13
Page 7

The Government owes a duty of candor to this Court, and upon learning of their Affiant's misstatement of law, should have made the appropriate correction. On March 3, 2020, the Government received through oral arguments at motion hearings, verifiable information that the Affidavit contained the aforementioned misstatement of law vis-à-vis Warning Letters. As such, the Government was put on notice that the primary investigator in this prosecution had sworn to a material misstatement in multiple Affidavits. The Government does not attempt to say the Defense is misstating the legal status of Warning Letters. (De-491). Rather the Government invites the Court to believe that an agent of the FDA Office Of Criminal Investigation has used a Merriam-Webster Dictionary, rather than the relevant FDA Manual, in defining the legal status of a Warning Letter. (DE-491). The Government then invites this Court to believe that the Affiant swore to this, in good faith, to a Magistrate. This strains credulity to the breaking point and beyond.

An attorney must not "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Florida Bar Rules of Professional Conduct 4-8.4(c). An attorney must not "knowingly make a false statement of material fact . . . to a tribunal." Florida Bar Rules of Professional Conduct 4-3.3(a)(1). Attorneys admitted *pro hac vice* practice under the same professional rules as regularly admitted counsel, such attorneys must measure up to the same high standards of respectability and, accordingly, must be afforded notice and an opportunity to be heard when charged with violations of such rules. *Kirkland v. National Mortg. Network, Inc.*, 884 F.2d 1367, 1372 (11th Cir. 1989). The Government, on notice of this misstatement through oral argument, was required to make the appropriate disclosure to the Court. Instead, eighteen months later, the Government expects the Court to credit the Affiant, an "extensively trained" FDA Agent, who believed Merriam-Webster to be controlling authority for the legal status of a Warning Letter. Defendants respectfully remind this Court that revocation of the Government Attorneys *pro hac*

*vice* status is the appropriate remedy for these violations. In the alternative, the Defendants would request to fully brief the issue at a later date, as the material omissions and misstatements are not limited to the issues of the instant Reply.

### (3) The affidavit was misleading as it pertains to N-Acetyl-Cystine (NAC)

Defendant's Motion to Suppress makes note of the inaccuracies in the Affidavit as it pertains to the dietary supplement N-Acetyl-Cystine ("NAC"). Here, the Affiant contends that NAC was approved as a drug by the FDA in 1985. Defendants' Motion, citing the FDA's own records, disproves the Affiant's claim that NAC is a drug. (DE-479). In return, the Government Response abandons the 1985 date entirely, claiming that NAC was approved as a drug in 1963, and therefore cannot be a dietary supplement. (DE-491). However, the 1963 approval pertained *only* to NAC as an inhaled drug, which has now been discontinued. The type of NAC that was approved as a drug could never have been a dietary supplement, as it was not intended to be consumed orally and digested, as required under DSHEA.

Inhaled NAC could never be a dietary supplement and it is not the same article as oral NAC. The lines between different routes of administration have been well-defined. For example, Vitamin B12 (cyanocobalamin) was approved by the FDA as an injectable drug prior to 1982[8]. Yet, there are currently at least 17,260 dietary supplement labels that list cyanocobalamin as an ingredient. This does not suggest that it may be sold in other forms (See: *United States v. Ten Cartons*, 888 F. Supp. 381 (E.D.N.Y. 1995), disallowing intranasal application) and there is no indication through DSHEA or elsewhere that different routes of administration are to be considered the same article. In addition, even taking the Government's argument as correct, as the drug has been discontinued, it is unclear whether the statute continues to apply moving forward.

---

[8] https://www.accessdata.fda.gov/scripts/cder/ob/results_product.cfm?Appl_Type=N&Appl_No=011208#1222

Finally, DSHEA was enacted in 1994 and cannot be understood to retroactively ensnare an abandoned 1963 filing to proscribe future sales of this ingredient as an orally consumable dietary supplement. "Since the early days of this Court, we have declined to give retroactive effect to statutes burdening private rights unless Congress had made clear its intent." *Landgraf v. USI Film Products*, 511 U.S. 244, 270 (1994). *United States v. Heth*, 7 U.S. (3 Cranch) 399, 413 (1806) "Words in a statute ought not to have a retrospective operation, unless they are so clear, strong, and imperative, that no other meaning can be annexed to them, or unless the intention of the legislature cannot be otherwise satisfied." (opinion of Paterson, J.)

**(4) The Affidavit did not Accurately Describe Ostarine and DMAA**

The Government continuously misunderstands and misconstrues the legal standing of Warning Letters and Advisory Opinions. That the Defendants "concede" their existence is not relevant. Without legal standing, neither rights nor obligations flow from either type of document. Existence, and concession of such, of a legally null document, the Government misses this point entirely. Being "in line with scientific and legal" opinions espoused by the FDA likewise carries neither rights nor obligations. The Government must not be allowed to use these announcements simultaneously as a sword with which to declare substances illegal, and a shield to avoid the public comment and judicial review that comes with official rulemaking.

Attorneys representing the Department of Justice in the instant prosecution fail to understand their role as part of the executive branch. That the Defendants assert their right to only be prosecuted for crimes that represent "settled law"[9], is nothing less than the Constitution requires. Allowing the Government as the prosecuting branch to inject their own expansive view of a statute that carried both civil and criminal penalties "would turn [their] normal construction .

---

[9] Government Opposition; DE-491.

. . upside-down, replacing the doctrine of lenity with a doctrine of severity." *Crandon v. United States*, 494 U.S. 152, 178, 110 S. Ct. 997, 108 L. Ed. 2d 132 (1990) (Scalia, J., concurring in judgment).

### (5) Allegations on Misbranding

The Defendants do not misunderstand the Affidavit as it pertains to misbranding. Defendants point out in its Motion to Suppress yet another example of reckless misstatements by the Affiant. The statements made regarding Brutal 4ce in the Affidavit claim that "[a]s early as 2004, FDA publicly stated that products containing androstenedione are not lawful dietary supplements…" (War. Aff. ¶74). The Defendants motion clarifies that the FDA is in fact "still considering the legal status of androstenedione-containing products." (DE-479 at 8). It is this statement, discussing the legality of a substance, that Defendants maintain should be removed from Affidavit – along with *all* other misstatements – when re-evaluating the Affidavit's ability to establish probable cause. Defendants reiterate their position that the voluminous misstatements made by the Affiant effected the Magistrate's finding of probable cause, and as such, a *Franks* hearing is required to address the issues raised in the Defendants motion.

The Government misstates Defendant's position on Misbranding. However, as the alleged misbranding could not have taken place at the Blackstone Labs premises (where no dietary supplements were actually manufactured, nor labels affixed), and the information was stale[10], it is unclear as to why. The responsible party is not currently a defendant, and Defendants respectfully reserve the right to fully brief this issue, as the Government's Response claims that the remaining Defendants do not have such standing.

---

[10] As seen through the warrant's execution where the violative batches were not seized.

### (6) Picamilon as a dietary ingredient

The Government's Opposition concedes that the Affiant purposely swore to an altered form of DSHEA, removing a key word. (DE-491). However, the Government incorrectly denies that removal of this word is an omission. The Government also denies that inclusion of the word "combination" would alter the probable cause analysis. In fact, Picamilon is precisely this—a combination. The Government provides no justification for the Affiant purposely editing out the word "combination." Instead, the Government believes that the Affiant is free to make these omissions throughout the Affidavit, so long as elsewhere the statute is correctly cited.

Contrary to the Government's assertion, if the Court adds the word "combination[11]" as required by statute to the definition of dietary supplement under DSHEA, a claim that Picamilon is non-compliant, becomes futile. A combination is produced by a combination reaction (also known as a synthesis reaction). This is a reaction where two or more elements or compounds combine to form a single compound (reactants and product, respectively). A combination, therefore, is the end result of a combination reaction[12]. It is a single product formed by reaction. This is the scientific definition, and since DSHEA fails to define the word "combination", the most germane (chemical) definition is controlling. This is precisely what Picamilon is, a combination of niacin and GABA, two compliant dietary ingredients. Note that this is also the same definition one finds in the Affiant's Merriam-Webster Dictionary[13]: "the act or process of combining especially: that of uniting to form a chemical compound."

### (7) Prior court ruling

---

[11] https://en.wikipedia.org/wiki/Combination_reaction
[12] https://chem.libretexts.org/Bookshelves/Introductory_Chemistry/Book%3A_Introductory_Chemistry_(CK-12)/11%3A_Chemical_Reactions/11.04%3A_Combination_Reactions
[13] https://www.merriam-webster.com/dictionary/combination

Case 9:19-cr-80030-WPD   Document 500   Entered on FLSD Docket 10/12/2021   Page 13 of 17
Case 8:21-cv-03112-TDC   Document 1-13   Filed 12/06/21   Page 14 of 18

"The defendants seek to extend the Quidera decision to suggest that determining the "legal status" of an ingredient is so difficult as to bar criminal prosecution on due process grounds. This argument both contradicts binding authority, e.g., Heckler, 470 U.S. at 835, and implies, again with no basis, that every prior FDCA criminal prosecution without a prior final agency rule was unconstitutional." (DE-491 pg. 19)

This is a gross overstatement. Defendants have neither suggested nor implied anything the Government is claiming. Here, the Defendants merely note that in instances where the Court has already ruled on the substances at issue, and in the absence of a controlling definition or final rule from the FDA, those rulings ought to stand as authoritative. In this instance, Defendants merely claim that those rulings ought to be more authoritative than a Search Warrant Affidavit, for purposes of this motion and determining whether a Franks Hearing is proper, or whether evidence must be suppressed.

**(8) Formal Rule Making**

There is a constitutional requirement that criminal statutes provide citizens with fair notice of the conduct that can subject them to punishment. This is Due Process[14]. To impose a criminal penalty on a citizen, there must be a law, or agency regulation or interpretation promulgated with the force of law. No less will suffice. Deference will be accorded to an agency interpretation when Congress has "delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead Corp.*, 533 U.S. 218, 226-27, 121 S. Ct. 2164, 2171, 150 L. Ed. 2d 292 (2001); See also: *Chevron, U.S.A., Inc. v. NRDC, Inc.,* 467 U.S. 837, 104 S. Ct. 2778 (1984). However, Special Agent Kelly McCoy is not the Food and Drug Administration. The

---

[14] U.S. CONST. amends. V ("No person shall be . . . deprived of life, liberty, or property, without due process of law."), XIV, § 1 ("No State shall . . . deprive any person of life, liberty, or property, without due process of law."). See United States v. Lanier, 520 U.S. 259, 265 (1997) (describing the fair warning requirement as an "application of [the Due Process Clause's] spacious protection of liberty").

Ex. 13
Page 13

Affiant is not the Agency, nor are the Government Attorneys; neither are allowed to promulgate ad hoc regulations that produce new crimes.

The Supreme Court construes Due Process to mean that no person ought to be forced "to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939). Criminal defendants may not be prosecuted unless the statute "define[s] the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement." *Skilling v. United States*, 130 S. Ct. 2896, 2927–28 (2010) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)). This is the level of fairness required for citizens to conduct themselves in a way that avoids punishment, and the protection against arbitrary enforcement by police officers, judges, and jurors. Id., at 361.

The Supreme Court observed that it "ha[s] never held that the Government's reading of a criminal statute is entitled to any deference," *United States v. Apel*, 134 S. Ct. 1144, 1151, 188 L. Ed. 2d 75 (2014). The prosecution is not to be afforded deference in the interpretation of statutes carrying criminal penalties. Criminal statutes "are for the courts, not for the Government, to construe." *Abramski v. United States* 573 U. S. 169, 134 S. Ct. 2259, 189 L. Ed. 2d 262, 285 (2014). It is well established that where a law has both criminal and civil applications, the rule of lenity governs its interpretation in both settings. See, e.g., *Leocal v. Ashcroft*, 543 U. S. 1, 11-12, n. 8, 125 S. Ct. 377, 160 L. Ed. 2d 271 (2004); *United States v. Thompson/Center Arms Co.*, 504 U. S. 505, 518, n. 10, 112 S. Ct. 2102, 119 L. Ed. 2d 308 (1992) (plurality opinion); id., at 519, 112 S. Ct. 2102, 119 L. Ed. 2d 308 (Scalia, J., concurring in judgment).

WHEREFORE, for the reasons set forth herein and in the Defendant's Motion for Clarification, the Defendants respectfully request this Court: (1) conduct an evidentiary hearing pursuant to *Franks v. Delaware* into the accuracy of the affidavit upon which the warrants were issued; (2) upon good cause shown at the hearing, enter an Order suppressing all evidence seized in or as a result of the seizures pursuant to the warrants issued upon misleading and incorrect affidavits; (3) disallow those ingredients of indeterminate legal status to be prosecuted; and, (4) for such other and further relief as this Court may deem just and proper.

**DATED** this **12th** day of October 2021.

### REQUEST FOR ZOOM HEARING

Pursuant to Local Rule 88.9 undersigned counsel respectfully requests that this Motion be scheduled for a hearing via Zoom due to the ongoing COVID-19 pandemic.

Respectfully submitted,

**RICHARD G. LUBIN, P.A**.
707 North Flagler Drive
West Palm Beach, FL 33401
Telephone: 561-655-2040
Facsimile: 561-655-2182
Email: rich@lubinlaw.com
Counsel for Aaron Singerman

By: */s/ Richard G. Lubin*
**RICHARD G. LUBIN**
Fla. Bar No. 182249

*/s/ Amy Morse*
**AMY MORSE, ESQ**.
Morse & Morse, LLC
Of Counsel to Richard G. Lubin, P.A.
707 North Flagler Drive
West Palm Beach, FL 33401
T: (561) 651-4145

Ex. 13
Page 15

F: (561) 655-2182
Email: amy@morselegal.com
FL Bar No.: 0388475
Co-Counsel for Aaron Singerman

*/s/Benedict P. Kuehne*
**BENEDICT P. KUEHNE**
Florida Bar No. 233293
**KUEHNE DAVIS LAW, P.A.**
100 S.E. 2nd St., Suite 3550
Miami, FL 33131-2154
Tel: 305-789-5989
Fax: 305-789-5987
ben.kuehne@kuehnelaw.com
efiling@kuehnelaw.com
Counsel for Defendant Braun

*/s/Michael T. Davis*
**MICHAEL T. DAVIS**
Florida Bar No.: 63374

*/s/Susan Dmitrovsky*
**SUSAN DMITROVSKY**
Florida Bar No. 73296

**KUEHNE DAVIS LAW, P.A.**
100 S.E. 2nd St., Suite 3550
Miami, FL 33131-2154
Tel: 305-789-5989
Fax: 305-789-5987
mdavis@kuehnelaw.com
efiling@kuehnelaw.com
Counsel for Defendant Blackstone Labs, Inc.

*/s/ J. Stephen Salter*
**J. STEPHEN SALTER**
8975 Pompano Way
Gulf Shores, Alabama 36542
Phone: 205-585-1776
Email: umstakwit@aol.com

Admitted Pro Hac Vice for Defendant Boccuzzi

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 12, 2021, I electronically filed the foregoing document with the Clerk of Court using CM/ECF and that the foregoing document is being served this day on all counsel of record or *pro se* parties, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        By:    */s/ Richard G. Lubin*
                **RICHARD G. LUBIN**